## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**JAMES SPEARS, JR.**
**ADC #122695**                                                    **PLAINTIFF**

v.                              **No. 3:22-cv-69-DPM**

**JENNIFER EPHLIN LONG, Former**
**Shift Supervisor, Osceola Police**
**Department;  CHRIS VAUGHN,**
**Officer, Osceola Police Department;**
**and DAKOTA DUNKIN, Officer,**
**Osceola Police Department**                    **DEFENDANTS**

### ORDER

At around 9:20 p.m. on 17 March 2019, Osceola Police Officer Dakota Dunkin stopped James Spears for talking on his cell phone while driving and for driving with his high beams on. Officer Dunkin's body camera captured what happened. *Doc. 89*. The focus of the stop shifted when Officer Dunkin approached Spears's car and smelled marijuana. He radioed for backup and repeatedly asked Spears to step out of the car. Spears declined and became agitated. Officer Dunkin radioed a second time, telling the backup officers to "step it up." The officer kept his flashlight on Spears as they waited. Spears told him that the flashlight was hurting his eyes, that he suffered from "mental issues," and that he was about to have a mental "episode."

Officers Jennifer Ephlin (now Long) and Chris Vaughn arrived a

couple of minutes after the first call for backup.  They smelled marijuana too.  The officers asked Spears to exit his vehicle several more times.  Spears refused, repeated that he was a "mental health patient," and insisted that the officers call his doctor for medicine. Officer Dunkin reached through the driver's window and removed the keys from the ignition.  Officer Vaughn reached through the passenger door and unbuckled Spears's seatbelt.  Spears started reaching for a bag in the passenger seat and for his pockets.  Officer Dunkin drew his service weapon and ordered him to "stop reaching."  Spears began writhing in his seat, shouted that he was "fixing to have an episode," and reached for the driver's seatback pocket.  Officer Vaughn drew his taser and told Spears he would tase him if he did not get out of the car. Spears yielded.

Officer Ephlin guided him out of the car, handcuffed him, and patted him down.  She recovered a bag of marijuana from his pocket. Officers Dunkin and Vaughn walked him to the back of a police cruiser. Spears sat sidesaddle, refusing to put his legs inside the vehicle. The officers moved his legs inside and shut the door.  They then searched his car and found two handguns—a BB gun and a loaded .25 Titan.  The BB gun was in the bag on the passenger seat;  the Titan was in the driver's seatback pocket.  While they were searching, Spears (still in handcuffs) got loose from the police cruiser and demanded that the officers take him to the police station.

Officer Dunkin ordered him to get back in the car. When he refused, Officer Dunkin wrangled him back inside at taser-point. The parties agree that Spears was never "struck by the officers, taken to the ground, pepper-sprayed or tased." *Doc. 81 at 4*. The stop, though, was heated and confrontational, including much shouting.

Officer Vaughn took Spears to the Osceola City Jail, where he was booked on three charges: being a felon in possession of a firearm, possessing marijuana, and resisting arrest. *Doc. 66-3*. Spears says Officer Dunkin came by his holding cell the next day and told him that he was now charging Spears for driving with his high beams on. *Doc. 80 at 32*. According to Spears, Officer Dunkin wanted to prevent him "from beating the gun charges" and to retaliate against him for threatening to sue the officers during the stop. *Ibid.* Officer Dunkin never filed the high-beams charge. And the prosecuting attorney did not include it in Spears's criminal information. Spears pleaded guilty to being a felon in possession of a firearm, and his remaining charges were *nolle prossed*.

*

Spears has sued Officers Dunkin, Ephlin, and Vaughn. He presses many federal claims, plus a state law conversion claim for some gold jewelry that went missing after the stop. The Court trimmed the claims (and dismissed several defendants) in earlier Orders. *Doc. 7, 11, & 12*. The officers have moved for summary judgment. Where some genuine

dispute of material fact exists, the Court has taken the record in the light most favorable to Spears. *Oglesby v. Lesan*, 929 F.3d 526, 531-32 (8th Cir. 2019). When the body camera video is clear, the Court has accepted that video for the truth of what happened. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

*First*, Officer Dunkin's stop was not unlawful. "The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Steed ex rel. Steed v. Missouri State Highway Patrol*, 2 F.4th 767, 770 (8th Cir. 2021). "Any traffic violation, however minor, provides probable cause for a traffic stop." *Ibid.* In Arkansas, with some exceptions, it's illegal to text or engage with a social networking site while driving. ARK. CODE ANN. § 27-51-1504. It's also illegal for a driver to operate his high beams within 500 feet of an oncoming vehicle. ARK. CODE ANN. § 27-36-211.

Spears admits that he was talking on his cell phone and that his high beams were on when Officer Dunkin stopped him. *Doc. 80 at 16.* He focuses, instead, on whether he was actually breaking any laws. He emphasizes that he was talking—not texting—on his cell phone. And he says "the operation of his High Beams did not endanger the vehicle which was over 300 feet in front of him." *Ibid.*

Spears is right about the cell phone law. It is not illegal to talk on a cell phone while driving. ARK. CODE ANN. § 27-51-1504(a)(2). Officer Dunkin was therefore mistaken when he told Spears:

"You can't use a phone at all while you're driving."  *Doc. 89 at 02:21:31–02:21:33.*  (Talking on a cell phone while driving had been illegal two years earlier.  *See* Act of 27 March 2017, No. 706, § 3, 2017 Ark. Acts 3459, 3461.)  But Officer Dunkin also stopped Spears for driving with his high beams on.  *Doc. 89 at 02:25:06–02:25:09*; *Doc. 66-7 at 2.*  And the video shows Spears passing an oncoming vehicle around the time Officer Dunkin turned on his police lights.  *Doc. 89 at 02:20:17–02:20:21*; *Scott*, 550 U.S. at 380.  Based on what Officer Dunkin reasonably knew at the time, he had at least arguable probable cause to stop Spears for the high-beam violation.  *Steed ex rel. Steed*, 2 F.4th at 770.  And his mistake of law about Spears's cell phone use doesn't negate that arguable probable cause.  *Devenpeck v. Alford*, 543 U.S. 146, 153-155 (2004).  In any event, Spears's claim that the stop was unlawful is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  *Sanders v. Fayetteville City Police Department*, 160 F. App'x 542, 543 (8th Cir. 2005) (unpublished and *per curiam*).

*Second*, the officers used reasonable force to arrest Spears.  To the extent the light from Officer Dunkin's flashlight constituted "force," it was not excessive.  It was dark, Spears refused to get out of his car, Officer Dunkin smelled marijuana, and Spears was getting upset.  Officer Ephlin used no more force than was necessary to handcuff him.  *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006).  The video undermines Spears's claim that Officer Dunkin sexually assaulted him.

*Doc. 89 at 02:42:26–02:43:29*; *Scott*, 550 U.S. at 380.  And the nine-plus minutes that Spears spent inside the police car—on a March night with a 65-degree high and a 36-degree low*—do not amount to a Fourth Amendment violation.  *E.g.*, *Joseph v. Donahue*, 392 F. Supp. 3d 973, 990-91 (D. Minn. 2019) (collecting "hot car" cases).

*Third*, because the officers used reasonable force to arrest Spears, his failure to protect claims fail as a matter of law.  *Hicks v. Norwood*, 640 F.3d 839, 843 (8th Cir. 2011).

*Fourth*, Spears has not shown an objectively serious medical need. He told the officers that he was mentally ill and that he felt an "episode" coming on.  But he received medical care the day after his arrest. *Doc. 81 at 5.*  And he offers no "verifying medical evidence" showing that this one-day delay had a "detrimental effect" on him.  *Cheeks v. Belmar*, 80 F.4th 872, 878 (8th Cir. 2023).

*Fifth*, Officer Dunkin did not retaliate against Spears based on Spears's threats to sue the officers.  Spears was never charged for driving with his high beams on.  And even if he had been, there would have been probable cause to do so.  *Nieves v. Bartlett*, 587 U.S. 391, 400-01 (2019).

*Sixth*, the Court dismissed Spears's Equal Protection claims

---

* The Court takes judicial notice of *Doc. 66-8*, the National Weather Service's March 2019 climatological data for Jonesboro, Arkansas, which is approximately fifty miles from Osceola.  Fed. R. Evid. 201.

without prejudice when it screened his complaint. *Doc. 12 at 2-3*. Spears alleged that the defendants conspired against low-income black people to secure unjust criminal convictions. *Doc. 1 at 14-16*. The Court rejected these claims because Spears's "allegations [were] not pleaded with enough specificity and factual support to suggest the defendants had a meeting of minds directed toward the unconstitutional action." *Doc. 12 at 3*. But the Court could have been clearer about his claim that Officer Dunkin singled him out based on his race. That claim failed because Spears did not identify an individual who was "similarly situated in all relevant respects" whom Officer Dunkin didn't stop. *Gilani v. Matthews*, 843 F.3d 342, 348 (8th Cir. 2016) (quotations omitted); *see also Hager v. Arkansas Department of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013); *Doc. 136 at 4-5* in *Edwards v. Dunkin*, Case No. 3:19-cv-126-DPM (E.D. Ark. 2 Nov. 2023).

*Last*, because no federal claims remain, the Court declines to exercise supplemental jurisdiction over Spears's conversion claim for his gold necklace and watch. 28 U.S.C. § 1367(c); *McManemy v. Tierney*, 970 F.3d 1034, 1040-41 (8th Cir. 2020).

\*     \*     \*

The officers' motion for summary judgment, *Doc. 64*, is granted. Spears's motion to appoint trial counsel, *Doc. 87*, is denied as moot. His embedded request for copies is denied without prejudice. It is unclear what documents he seeks. He may renew his request with a

specific list by separate motion.  Judgment will issue.

So Ordered.

*D.P. Marshall Jr.*

D.P. Marshall Jr.
United States District Judge

*25 October 2024*